The next case of oral argument is Austin v. Webb. My name is Curtis Flood and I represent Steve Webb and Mr. Webb is appealing the revival in 2012 of a 2003 default judgment entered against it. The circuit court was due to enter a 2003 judgment. The circuit court didn't realize it was entering a default in an NASD government arbitrable matter. This never should have been entered. The question is whether the Madison County Circuit Court had jurisdiction to enter this judgment. We're talking about subject matter jurisdiction. There are two ways that a court can end up without jurisdiction, without subject matter jurisdiction in a given case. The first one is when the court never a judgment is void when the circuit court, having jurisdiction in the case, exceeds its jurisdiction, enters a judgment it does not have authority to enter, resulting in a void judgment. We're saying that the circuit court had jurisdiction in this case but entered a judgment that it didn't have authority to enter. And we're saying that on two grounds, neither of which is sufficient having some federal law and state law go the same direction in this case. Starting with federal, the supremacy clause of the U.S. Constitution, of course, says that federal law is supreme, that judges of every state are bound thereby. So we know that acts of Congress preempt state law and they also preempt state judge action. A state judge can't do something contrary to what Congress has said. Congress, through the Securities Exchange Act of 1934 as amended, delegated its authority to make law to the Securities Exchange Commission, made the Securities Exchange Commission as powerful as it was as far as making law. The Securities Exchange Commission could say what federal law was. The Securities Exchange Commission spoke with the authority of Congress. The Securities Exchange Commission authorized the NASD, the National Association of Securities Dealers, as a freestanding self-regulatory organization. It's not a governmental entity, it's private, but authorized it to govern its members. And the NASD, as the Credit Suisse case, the Ninth Circuit case explains, because of that delegation, that second delegation, the NASD spoke with the authority of the United States Congress. Its rules are the same as if the NASD were a government entity. And that's what we have here today. It is. The NASD has stated in the rule, rule number 10301A, that any dispute arising between the customer, which is what Mr. Austin is, and a member, which is what Mr. Webb's employer was, shall be arbitrated under this code. Shall. Shall be arbitrated under this code. And we've supplied the text of the rule in a request to take judicial notice. We haven't heard back from the court, but that's a reason why. But I hope that you have that in front of you so that you can see rule 10301A for yourselves. When the NASD writes, shall be arbitrated under this code, it's just as if Congress wrote it in Washington. It's the same authority. Excuse me, you asked to insert these rules after the filing of the briefs, right? Well, I cited it in the brief, and also cited where it could be located. But then I realized that I should have appended it to the brief as well, and therefore I filed a motion for judicial notice. But it repeats my motion for judicial notice in the brief. But I thought that way I'd have it in the court tent. I can see that work you have. Yes, my understanding is denied, so. I don't know why I haven't heard back. That's why I was wondering. Well, since I knew it must have got to the court because counsel responded to it, so thank you. The last subparagraph of rule 10301A says that the rule can't be waived. Can't be waived. It doesn't say it can't be waived in certain circumstances. It doesn't limit that. It just says it cannot be waived. Again, Congress says it can't be waived by defaulting. But that's what happened in this case. Let me ask you another question. Thank you, Your Honor. It's really, it's another aspect of this. My understanding from the briefs is that this default, as you phrase it, was entered as a discovery sanction. That your client, there was judgment entered. Would this rule, would this arbitration mandate basically preclude a circuit judge in the exercise of their duty as far as the discovery rules delineated from entering a sanction up to and including striking the answer and entering judgment in the management of any kind of civil case, including this? Your Honor, that's a very good question. I've thought about it a great deal and I'm anticipating that someone would act. I believe that Congress does have the authority to limit that. Well, let's take an analogous example. The circuit judge, the associate judge is trying an FELA case, federal law, and the circuit judge follows federal decisions as far as substantive matters in an FELA context. But that judge has not precluded, as a matter of fact, is mandated to follow the discovery procedures under the Supreme Court rules and under the applicable statutes. One doesn't preclude the other. In that situation, why would this mandated arbitration, waivable or not, preclude the circuit court from entering a discovery sanction? Your Honor, I'm well aware. I know nothing about FELA compared to you. I'm well aware that you've been a teacher and I've been a student. But, Your Honor, what should have happened in this case is that Austin should have complained to the judge that discovery was not being answered and demanded arbitration. And then it goes to the NASD and the NASD says, well, you're arbitrary or you have no choice. They have complete authority to make this arbitration happen, to enforce the award. Webb would have no choice. And then, if that had been done as it properly should have been done, it would have been discovered that they didn't even have his right to drive us. And if you look at the minute record, you can see that all these letters from the court keep bouncing back, keep bouncing back to the court. The letter allowing withdrawal of his attorney came back undeliverable. It's on C-233. This is all. Your default is because you didn't answer discovery. The letter comes back to the court undeliverable. When we're entering judgment, $50,000, the letter comes back undeliverable. That would have all been found out because Michael required by federal law to keep his current address on file with the NASD as a requirement of doing business. So there wouldn't even have been a default judgment if the rules had been followed. But, of course, the judge never even saw it coming in Madison County in 2012. He didn't realize he was dealing with an arbitration case. He just had a plaintiff asking for a default, plaintiff asking for a default at the peril. They better know what they're doing. I hope I've answered the question, Your Honor. I think sometimes I've beat around the bush and said a little truth. No, you didn't. Thank you. Your Honors, we think that the State Arbitration Act goes to the same place. It's not inconsistent. We think it's sufficient independent leg on which to point to the judgment. The Illinois Constitution says all circuit courts have jurisdiction of all justiciable matters. But an exception exists where the legislature creates rights and duties unknown at common law. That's the D.H.R. case. I mean, the Gevis case and the D.H.R. case is that that's what the Arbitration Act is. In creating rights and duties unknown at common law, the legislature was free to limit the circuit court's jurisdiction over arbitration matters. That's what the D.H.R. case says. In the brief, Section 16 of the Arbitration Act specifically addresses circuit court jurisdiction. How often do you see that? The legislature actually says, here's your jurisdiction. And our legislature says the making of an agreement described in Section 1 providing for arbitration confers jurisdiction on the court to enforce the agreement and to enter judgment. It's perfectly consistent with federal law. You get an arbitration case against an NASD member, you order arbitration. And of course, the expressio unius, et cetera, et cetera, if our legislature lists one thing, two things on which the court has subject matter jurisdiction and leaves out others, what does that mean about the others? It means that the court doesn't have that jurisdiction. And that's what we've got in this case. So under the statute, under the statute, say things by the law. This should never have happened. It should never have happened. I think that our position is well understood, and I appreciate the questions. If there are no questions, I will wait for rebuttal. Thank you, Counsel. Thank you, Your Honor. Counsel? May it please the Court, Counsel. My name is Mike Brunton, and I represent Dave Austin, who is the plaintiff, a plea in this case. This is a claim that was filed as a breach of a written contract. And some brief background, Austin had some options, and Austin, the options were held with Mr. Webb. Austin instructed Webb to execute those options. Webb didn't do it, and Austin lost money. Now, is this some kind of a stock firm or stocks and bonds deal, a firm dealing with a firm? Who were the parties to the agreement? The parties to the agreement was the stockbroker, Mr. Webb, and his company, which went out of business after this all happened. Was it a corporation? It was a corporation. Did he sign as personal, or did he sign it as the corporate officer? When we filed this, we did not have a copy of the written contract. Did you ever get one? There was none in court? No, and we put in the complaint. We certified, as we're supposed to under the rules, that we did not have a copy of the written complaint. And after this was filed, we filed a breach of written contract claim. Webb came in, and he answered the complaint. And he filed two affirmative defenses with Nancy. One was res judicata, and one was statute of limitations. I don't want to go into detail about those, but those are irrelevant, and those are not applicable to anything that is going on here today. We continued on with the case, and Webb didn't answer interrogatories. He didn't answer requests for production. He didn't show up for his deposition after it was duly noticed. And eventually, his attorney filed a motion to withdraw because he was failing to communicate with her. An order was entered allowing the attorney to withdraw, and the order said that Webb was supposed to file an entry of appearance or have a new attorney file an entry of appearance. That wasn't done either. So now we're sitting here. We've got a complaint on file. He's not participating in this action other than filing the initial answer. And the court eventually struck the answer in affirmative defenses and sanctioned Webb. We went in, and we did a proof of damages, and we got a judgment. The judgment was attempted collection several times where Webb hired another attorney who appeared down in Texas, and that was ongoing. We eventually filed a motion to revive the judgment, and that's where this appeal arose out of stating, now trying to state nine years after the judgment was entered, that the court didn't have subject matter jurisdiction. And Webb is claiming that there was this arbitration clause in the… Before you get to that, let me ask you the same question I asked Mr. Blunt. Sure. Regardless of the arbitration clause, regardless of whether it was waivable or not, did the circuit court in this case have the power to enter sanctions under the discovery rules, including but not limited to striking the answer and going to judgment? Oh, absolutely. Because, I mean, at any point in time, Webb or Webb's attorney could have raised these issues down in the trial court. And when you just don't participate, what is the court supposed to do? I mean, you've got to go forward and run the court smoothly. You've got to have sanctions. You've got to have the striking of the answer. Otherwise, nothing would ever get done. I mean, he could have raised this stuff down at the trial level. He could have raised it in a post-judgment order. He could have appealed this nine years ago. If you don't allow the court to have the sanctions available to it, you know, you wouldn't be able to run a court system. What effect would the sections that your opposing counsel cited about non-waivability of arbitrability have as far as, if any, have on the power of the court to impose sanctions? Well, first of all, I don't think that that's what that says. And one of the arguments I was going to make, and I'll just jump to that right now. Well, first of all, there is no arbitration clause that's ever been provided in this case. He's just said that there is an arbitration clause. We've never had it. Let's assume there is an arbitration clause in this contract that's never been found, and let's assume that it is not waivable. Does that affect the circuit court's power to impose sanctions as part of its duty to regulate the scope? It shouldn't because, like I said before, the court has the authority to issue the sanctions to the court properly. And because they didn't raise these arguments, they have to run the court smoothly. So whether there was a written contract there or whether it was implied by law, which it's not, it doesn't matter. The court had the right to issue those sanctions. I have a question. Was there a second counsel appearance for the defendant? No, there was only the first counsel. So then the first counsel got off the case. Correct. So then now we're pro se, apparently. Well, he never entered his appearance after the first counsel. Did he get permission of the court to get off the case? Yes. Okay, so then I'm assuming you're pro se. Then where were the notices sent? Were there notices sent of any kind of hearings or anything? In the order, I believe it said the last known address of the web. Not to the last known address of counsel? Correct. So these notices were sent to the defendant? Correct.  The last known address. The last known address. It was given to the court. Right. Now, one of the arguments that Webb is making here, they're saying, well, you know, we don't have the arbitration clause to produce, but we believe that it's implied by law. That's the argument that Webb is making. But the law that's cited by Webb is actually after the written contract that was entered into between the parties. The written contract was in the 90s. This law cited by Webb in the brief was 2003. And they're trying to say, well, this law applied to this written contract about the arbitration clause. That's not applicable. The second thing is they're saying that this is securities law. And we believe securities law applies in this case. But securities law is very, very complicated, and it doesn't always apply to every sale of securities or every sale of options or purchase of options. And there's been nothing provided to this court to indicate that securities laws would be applicable to the sale of these options. There's no evidence whatsoever. We don't have any depositions. We don't have any affidavits. We don't have any documents to show that securities law is applicable to this case, which is the only way they can argue that there was an arbitration clause to begin with, because it's not provided to the court, and they're trying to imply it. The second thing is Webb's attorney said that this uniform code of arbitration, which was allegedly applicable to this case, he said that any dispute shall be arbitrated under this code. That's what he said that the uniform code of arbitration says, but that's not what it says. And I cited that in my brief. What it actually says is any dispute shall be arbitrated under this code as provided by any duly executed and enforceable written agreement. It goes on to say that. You've got to have a written agreement, which has not been provided to the court. So even if you assume that the 2003 laws were applicable to this written contract, and even if you assume that the security laws apply to this written contract, if you look at what the law says, you've still got to have an enforceable written contract for arbitration to apply. Finally, arbitration clauses are contained in a lot of different documents. I do a lot of employment law, and they're putting them in employment contracts right and left. And you can still file a case in civil court, and it can be waived by the defendant. Arbitration clauses are waivable. What Webb's attorney stated to you was that the rule can't be waived, but it doesn't say anything about arbitration not being waived. And this was never raised when the answer was filed initially. There was never any affirmative defense that there was an arbitration clause in here, and you can't proceed in civil court. You have to arbitrate. Nothing was ever raised. Finally, I believe that this is a backdoor attempt to try to appeal this nine years after the fact, and there's just no basis for this, and I have asked for attorney's fees and costs, and we would like the court to find that the judgment was revised. Thank you. Thank you, counsel.  Thank you, Your Honor. If you've noticed, counsel has said that there's no arbitration agreement in the record. That's true. But Austin plaintiff has been very careful not to deny that the parties had an arbitration agreement in this contract, very careful. You know, it's the only ethical thing to do. You can't deny it. It was there. And Webb believed that it was there. Austin's never denied it. All he's saying is, where is it? Well, we don't know. Are you saying that the arbitration agreement was raised in the answer? Yes, Your Honor. Motion to dismiss. So it was raised as an affirmative matter for the court? It was. And when the motion to dismiss was denied, was it reaffirmed and as an affirmative defense? Your Honor, the motion to dismiss was never ruled upon. Never ruled on. But there was an answer filed. Yes. Well, I'm not sure it was nominated an answer. Did his lawyer file it? He had a lawyer. He had a lawyer. He had a lawyer answer the complaint. At least respond to it. Responded to it. I'm not sure what the caption was, but certainly responded. And raised arbitration as an affirmative defense? Yes. Oh, as in the last three words, as an affirmative defense. I don't know if the words affirmative defense were on it. But the pleading said that this agreement is controlled by arbitration. Are you saying Congress intended to occupy the entire field in this regard? You started out your argument by talking about preemption. If you have field preemption, aren't you occupying the entire field so that the court could never have jurisdiction? Oh, no, I think the court had jurisdiction. You agree the court had jurisdiction. Sure. The court had jurisdiction over arbitration. And just as Justice Goldenhurst says, then, the court had the power to control its docket as well. You have to agree with that, then. I agree. But unless, except unless, it conflicted with federal interest as expressed by Congress in federal law. Which has not been briefed anywhere in the pleadings. Not been raised in the pleadings below. That is true. No. But as I understand it, Your Honor, we're entitled to subject matter jurisdiction. But you agree there was subject matter jurisdiction. You're only talking about scope. Scope was subject matter jurisdiction. Right. Yes, absolutely correct. Thank you. The waiver clause in the federal law says no member or associated person shall be deemed to have waived any of its rights under this code or any agreement to arbitrate. Well, that's not what she wants. That's pretty straightforward. You can't waive it. You can't waive it. Justice Welch, we asked about some of the things that happened below. Notice. In 2001, there was an order entered stating that the parties agreed not to proceed while Austin went after Gateway, which had defaulted entirely. Just never answered the complaint. It was, as it turns out, evidently his default. That's 2001. In 2003, that's when Austin moved to compel answers to 2000 or 2001, I don't remember which, interrogatories that were promulgated at that time. So this is now going back a couple of years. We want the answers to that stuff that was a couple of years ago. So this is obviously the first salvo and continuing on, and this is when you realize obviously Gateway didn't pay up. Shearer, excuse me, trial counsel for Webb moves to withdraw, saying she can't effectively communicate with her client. Order entered allowing withdrawal of Shearer. Two weeks later, mail returned from post office for Steve Webb, unable to forward. This is the minute record. This is C233. Court grants plaintiff's motion to strike Steve Webb's answer and grants motion for sanctions. Two weeks later, return mail for Steve Webb, not deliverable, as addressed. Ten days later, same thing, mail returned, addressed to Steve Webb, not deliverable. Now, finally, judgment entered for plaintiff for $50,000. And two weeks later, the minute record is mail returned, addressed to Steve Webb, not deliverable, as addressed, unable to forward. So that's how this all happened. And I realize that this is more an emotional deal than a legal one. It doesn't affect avoidance in the judgment. But we're not taking any fault with this. This isn't our fault. We don't care. Let me ask you a question. Is there a duty on this party, on Webb, to keep the court advised as to where he is, how to reach him? Your Honor, I would think that that would be taken care of by having counsel. If you retain counsel and counsel's entered for appearance, wouldn't that do it? Well, counsel's withdrawn. But he didn't know that. I mean, he didn't receive that notice. I mean, according to the court file, C233, he didn't get that letter. And I could add a little bit to that. But what I did add would not be in the record. And so I'll hold my tongue on that. But he wasn't there. It's obvious he changed addresses. It's obvious from the minute record. And time had gone by. Things had been sitting on the back burner while Austin went after Gateway. Boom, all of a sudden, it's on the front burner. Oh, my lawyer hasn't been paid. She's out. He doesn't get that letter. Default judgment. Doesn't get that letter. $50,000. Doesn't get that letter. And here we are. Thank you, counsel. Thank you. We appreciate the briefs and arguments of counsel. We take the case under advisement. We'll be in the short recess and then resume oral arguments. All rise.